ALBION STATE BANK *v.* KNICKERBOCKER.[1]

1. EVIDENCE—INSOLVENCY.

The insolvency of an indorser of a note is sufficiently shown, upon a bill by the payee to enforce collateral security, by evidence that an execution against him was returned unsatisfied, and his own testimony that he has at no time been in financial condition to pay the note.

2. MORTGAGES — INTENT — CONTEMPORANEOUS STATEMENTS — RES GESTÆ.

Where a mortgage purported to secure the mortgagee against liability on all notes and obligations made by the mortgagor and indorsed by the mortgagee, or signed by him, as accommodation maker or otherwise, for and with the mortgagor, but limited the obligations to a certain amount, statements made by the mortgagor, at the time the mortgage was executed, that he gave it to secure three certain notes, which aggregated the amount stated therein, while the liability of the mortagee as accommodation maker exceeded that amount, are competent evidence, as part of the *res gestæ,* to show the intent of the mortgagor in giving the mortgage.

3. SAME—SUBROGATION.

Where a mortgage was given to secure the mortgagee against liability as indorser of certain notes of the mortgagor, both being at the time insolvent, the security immediately inured to the benefit of the holder of the notes, whose interest could not be devested by the act of the mortgagee in assigning the mortgage in trust for other creditors of the mortgagor, the trustee having notice of the interest claimed.

Appeal from Calhoun; Smith, J. Submitted October 5, 1900. Decided December 4, 1900.

Bill by the Albion State Bank against Charles R. Knickerbocker, William B. Knickerbocker, the Jackson City Bank, Nathan S. Potter, and Jennie P. Goodwin, as administratrix of the estate of William F. Goodwin, de-

[1]Rehearing denied May 21, 1901.

ceased, impleaded with the First National Bank of Albion, to enforce an equity in a real-estate mortgage. From a decree for complainant, defendants appeal. Affirmed.

*A. M. Culver* and *John C. Patterson*, for complainant.

*Thomas E. Barkworth,* for defendants Knickerbockers, Jackson City Bank, and Potter.

*Parkinson & Campbell,* for defendant Goodwin.

LONG, J. This bill was filed to enforce an equity in a real-estate mortgage security given by a principal debtor to his accommodation maker on certain notes. It appears that on February 4, 1896, William B. Knickerbocker was engaged in the milling business at Albion, under the name of the Albion Milling Company. He was indebted to the complainant in the sum of $5,000, for which he gave a note, with his father, Charles R. Knickerbocker, as accommodation maker. About April 21st, William B. became financially embarrassed, and gave his father a mortgage for $31,500, payable six months thereafter, with the following statement in the mortgage:

"It is hereby expressly understood and agreed that this mortgage is given to the said party of the second part to indemnify and secure him against all notes and obligations made by said William B. Knickerbocker, and indorsed by said party of the second part, or signed by him, as accommodation maker or otherwise, for and with the said William B. Knickerbocker, such notes and obligations amounting to said sum of $31,500."

This mortgage covered the real estate owned and occupied by the mortgagor, consisting principally of his mill and premises appurtenant thereto. Two other mortgages, to secure other creditors, were given contemporaneously with this instrument, as second and third mortgages, but they need not be considered in this case. The complainant brought suit on this $5,000 note against William B. and Charles R. Knickerbocker, and obtained judgment. Execution on this judgment was issued, and returned un-

satisfied.   On June 20, 1896, Charles R. Knickerbocker executed and delivered an assignment of said mortgage to Nathan S. Potter, of Jackson, as trustee for the Jackson City Bank, the First National Bank of Albion, and Jennie P. Goodwin, as administratrix of the estate of William F. Goodwin, deceased, and thereafter Charles R. Knickerbocker and the other defendants refused to recognize the complainant here as having any interest in said mortgage.

The bill was filed to have set aside the assignment of such mortgage; to have it declared void; to have defendants required to surrender such assignment to be canceled; and to have determined the amounts of all *bona fide* notes or obligations signed by Charles R. Knickerbocker, as accommodation maker or otherwise, for William B. Knickerbocker, and owned and held by the First National Bank of Albion, the Jackson City Bank, and Jennie P. Goodwin, administratrix.   The bill asks that a receiver be appointed to take charge of the property, to sell the same, and pay over the proceeds of such sale to complainant and to defendants holding *bona fide* notes or obligations at the date of said mortgage, signed by Charles R. Knickerbocker as accommodation maker for William B. Knickerbocker, in such amount or proportion as may be determined to be just and equitable under the provisions of said mortgage.   It is alleged in the bill that both Charles R. and William B. Knickerbocker were insolvent at the time of the giving of the mortgage and at the time of the assignment of it before referred to.   The court below granted a decree in accordance with the prayer of the bill.   The defendants have appealed.

The defendants say that, when the mortgage in question was given, it was ascertained by the creditors that the milling business would be greatly damaged by the cessation of business, and that the value of the property covered by the mortgage would be largely depreciated thereby; that complainant was asked to join with the others in a proposed reorganization of the milling com-

pany; and that it refused to do so, or to take part in any effort to conserve the assets of the milling company or continue the operation of the mill, but demanded payment of its $5,000 note, which it claimed was secured under the first mortgage, regardless of any other claim or interest involved; that, after these efforts to induce complainant to join in the reorganization of the business had failed, then Charles R. Knickerbocker assigned to the other defendants this first mortgage, they accepting the same in payment of their respective claims to the amount of their proportionate interests; that the reorganization was then effected, and the property has since been in the possession of the new corporation, representing the defendants the Jackson City Bank, Nathan S. Potter, Jennie P. Goodwin, administratrix, and the First National Bank of Albion, and the creditors interested in the other mortgages, and some unsecured creditors, to whom stock in the new company has been assigned. It is contended by the defendants that this mortgage was a mere personal indemnity to the mortgagee, and could by him be used in any honest way for his own protection against the obligations he had assumed for William B. Knickerbocker, and that the disposition he actually made of the mortgage was within his rights, and could not, in any event, be construed as the perpetration of a fraud upon complainant. It is also claimed that, while the evidence probably shows the insolvency of William B. Knickerbocker, there is nothing in the record which would warrant the court in finding that Charles R. Knickerbocker is insolvent, although it is said by counsel that this is not material, as affecting the legal rights of the defendants.

We may dispose of this last proposition first. We think the record shows conclusively that he, as well as William B. Knickerbocker, is insolvent. An execution was issued against them both, was returned unsatisfied as to both, and Charles R. Knickerbocker himself testified: "When I was sued with my son on the $5,000 note, I was

not in a financial condition to pay it, and have not been at any time since."

Some further statement of facts becomes necessary. It appears that the indorsement by Charles R. Knickerbocker as accommodation maker upon notes amounts to more than the $31,500 stated in the mortgage. He had indorsed other notes for William B., the total of said indorsements being $48,500. It is claimed by the defendants that, if this $31,500 mortgage can be regarded as an indemnity to secure creditors, it cannot be limited to the three creditors making claims under it, to wit, the complainant for $5,000, the Jackson City Bank for $8,000, and the First National Bank of Albion, which makes the total of $31,500, but that all creditors who hold notes signed by Charles R. Knickerbocker, as accommodation maker for William B. Knickerbocker, must be regarded as included within the mortgage. On the other hand, it is contended by counsel for complainant that the three creditors alone must be subrogated to Charles R. Knickerbocker's rights under the mortgage, as their claims aggregate just the $31,500 mentioned in it. Complainant also introduced testimony which it is claimed shows the fact that it was the intention of William B. Knickerbocker to secure only these three claims by the mortgage given. Warren S. Kessler, who was called as a witness, testified that he was asked to sign the third mortgage as trustee and as a witness to the second one; that he was present when all three were executed, and that at the time of such execution William B. Knickerbocker stated to him that he was in trouble, and had to give mortgages; that he gave the first, to the amount of $31,500, to his father to indemnify him against indorsements he had made for him as follows: To the First National Bank of Albion, $18,500; to the Albion State Bank, $5,000; and to the Jackson City Bank, $8,000. Wilbur P. Robertson, the bookkeeper for William B. Knickerbocker, mortgagee in the second mortgage, and a witness to the present mortgage, testified that at the time of the execution of the mortgages, in the

course of a general conversation, William B. Knickerbocker stated to him that the First National Bank was secured for $18,500, the Jackson City Bank for $8,000, and the Albion State Bank for-$5,000. He said:

"I cannot say whether he said this just at the time the mortgage was signed or not. There were present Mrs. Knickerbocker, Mr. Weeks, Mr. Kessler, and myself. It was between 10 and 12 o'clock at night, at Mr. Knickerbocker's residence.    *    *    *    I think Mr. Knickerbocker made the statement to me that those were the beneficiaries as he intended.    *    *    *    I do not think he made any statement that that was all the paper his father was on.    *    *    *    I did not understand that William B. wanted to secure his father for every bit of liability, but was to secure him against these three specific items."

Eugene P. Robertson testified that William B. stated to him that the mortgage was given to secure these three claims. The witness was president of the complainant bank. No testimony was given contradicting this testimony, and William B. Knickerbocker was not called as a witness to dispute any of the statements. We think it establishes beyond controversy that it was the intent of the mortgagor to secure the payment of these three notes and no others.

Defendant Goodwin's counsel contend that it is evident the maker of the mortgage had no idea of directly securing creditors, but only to secure his father; that nothing upon its face indicates these creditors as beneficiaries; and that it cannot be made to operate in their favor, except through the court in the exercise of its equity powers, and under circumstances that will wrong no one and work no injustice. It is admitted by counsel for the Knickerbockers, the Jackson City Bank, and defendant Potter that the general doctrine gives to the principal creditor the right of subrogation, in case of the insolvency of his surety and debtor, to any securities which may be held by the surety, but he denies that the rule is applicable to this case. He invokes the doctrine that where a mortgage is

not given to secure a debt, but to indemnify a surety, then the security does not, in the first instance, attach to the debt as an incident to it, but whatever equity may arise in favor of the creditor with regard to the security arises afterwards, and comes into existence only upon the insolvency of the parties holden for the debt; that until this equity arises the surety has a right, in equity as well as at law, to release the security; that the equity of the creditor in such case not being an inherent one, growing out of the contract, but resulting simply from a state of facts which entitles him to equitable relief, and becoming fixed only by the interposition of a court of equity, relief cannot be furnished, even though insolvency has intervened, unless the security is still retained by the surety at the time of the application of the creditor.    On the other hand, it is claimed by counsel for complainant that, the mortgage security having been given by the principal debtor when insolvent to secure his indorser and accommodation maker for such collateral liability, it immediately inured to the complainant's security and benefit in equity; that Charles R. Knickerbocker held the legal title in trust for complainant and other creditors of the class designated, and that he had no authority to divert such trust security, and deprive the complainant thereof; that Potter, having both actual and constructive notice of complainant's rights, took the assignment subject to such rights, and that a court of equity can and will, under such circumstances, vacate such assignment, and restore the complainant to its vested rights, and by a receiver enforce such security, and divide the proceeds thereof as the donor of said trust originally intended; that, it appearing in this case that the mortgagor and mortgagee were both insolvent, the said security at once inured to complainant's benefit as the creditor and holder of said note; that it became subrogated to its just share of the mortgage security as a vested right; and that a court of equity will lend its aid to make such security effectual for the purpose intended.

The mortgage in question purports to secure the mort-

gagee against his indorsements upon all notes and obligations made by William B. Knickerbocker, and indorsed by his father as accommodation maker or otherwise, yet it limits such obligations to the sum of $31,500. The testimony shows that he was accommodation indorser upon notes amounting to $48,500. This testimony was competent for the purpose of showing the intent of the mortgagor in the making of the mortgage. The statements were made at the very time of the execution of the instrument, and were a part of the *res gestœ*. That such testimony is competent is supported by the case of *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119 (7 Am. Dec. 478). The rule is stated in Jones, Chat. Mortg. § 342, that the declarations of the mortgagor, made at the time of the execution of the mortgage, are admissible in evidence as part of the *res gestœ;* and this doctrine is supported by the case of *Bushnell* v. *Wood*, 85 Ill. 88. Taking the intent of the mortgagor, as shown by this testimony, and reading the statement in the mortgage that it was to indemnify and secure Charles R. Knickerbocker on all notes and obligations indorsed by him as accommodation maker, such notes and obligations amounting to $31,500, it becomes evident that the only notes intended to be secured were the three notes already mentioned. The testimony also shows that the mortgage was not given merely as a personal indemnity to Charles R. Knickerbocker, but was given to secure the payment of the debts represented by these three notes.

We think it is the settled rule that, when collateral security is given or assigned for the better protection or payment of the debt, it shall be made effectual for that purpose; and to make it thus effectual a court of chancery will lend its aid, where it is made apparent, either by the instrument itself or by the parol testimony in the case, that it was the intent of the principal debtor to secure the debt by the security given to the surety, and the creditor in such case will be subrogated to the rights of the surety

in the property held by him. 19 Am. Law Rev. p. 868. In 2 Brandt, Sur. (2d Ed.) § 324, it is said:

"As a general rule, where a surety, or a person standing in the situation of a surety, for the payment of a debt, receives a security for his indemnity and to discharge such indebtedness, the principal creditor is in equity entitled to the full benefit of that security; and it makes no difference that such principal creditor did not act upon the credit of such security in the first instance, or even know of its existence. The authorities place the principle upon the ground that, as the security is a trust created for the better securing of the debt, it attaches to it, and hence it is that it may be made available by the creditor, although unknown to him."

This is supported by a great number of authorities. The rule is laid down in Coleb. Coll. Sec. § 217, that:

"Where the surety himself has received such securities from the principal debtor on account of the obligation assumed, equity creates a *quasi* trust in relation thereto, in favor of the creditor and of co-sureties, until the debt be discharged. The surety has no right to discharge or defeat such trust."

It is said in 1 Jones, Mortg. (4th Ed.) § 883*a*:

"This right exists although the mortgage was given to the surety by the debtor after both had become bound to the creditor, and although there had been no previous agreement that indemnity should be given, and although the mortgage was executed without the knowledge of the creditor."

In *Union Nat. Bank* v. *Rich*, 106 Mich. 319 (64 N. W. 339), the same rule is stated.

The facts show conclusively that the Knickerbockers were insolvent at the time of the giving of the mortgage and at the time that Charles R. Knickerbocker made the assignment to Potter. It is also shown that Potter knew of the claim made by complainant to be subrogated to the rights of Charles R. Knickerbocker under the mortgage before he took the assignment for the benefit of the other defendants. Under such circumstances, neither

Potter nor his beneficiaries can set up the claim of *bona fide* holders under such assignment.

The court was not in error in the decree made. That decree must be affirmed, with costs to the complainant.

The other Justices concurred.