R. P. BLUDWORTH, *Appellant,* v. JOHN N. BRAY, *Appellee.*

1. As a general rule when a state or condition is proven to have once existed there is a presumption of its continued existence. But this rule is dependent upon the degree of permanency of the subject matter under consideration, and there is no legal presumption of the existence in January, 1909, of field crops raised in 1907.

2. When it is stated that the consideration for the execution of a mortgage was solely to secure the payment of a note for $102.80, and the defeasance clause undertakes to require the payment of advances in addition to the said consideration, and when the answer to the bill of foreclosure sets up various facts tending to show that the mortgagor did not intend that the mortgage should be a security for any other debt than the note and that the note has been paid, and there is no excep-

tion to the answer, and the facts proven tend to support the answer, a decree finding the equities to be with the defendant in the court below will not be disturbed on appeal.

This case was decided by the court En Banc.

Appealed from the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the court.

*W. T. Bludworth,* for Appellant;

*Daniel Campbell & Son,* for Appellee.

HOCKER, J.—The appellant R. P. Bludworth filed a bill in the circuit court of Walton county to foreclose two mortgages executed to him by John N. Bray, appellee.

The bill alleges that appellant has been a merchant at Eucheanna, Walton county, for several years last past, and that on the 16th of March, 1908, appellee was indebted to him for supplies already furnished, and on that day executed to him a note for $102.80, and to secure the payment of said note, and the payment of the balance due him, next prior to and the time of executing said note, for supplies already furnished, and other supplies and advances that might be made to appellee during the life thereof executed on that day a mortgage on certain farm crops that may be grown on appellee's farm in Walton county, a description of which is given.

That on the first of January, 1909, appellees was indebted to appellant in the sum of $248.02. The note and mortgage are attached to the bill as exhibit "A" and Exhibit "B" and made a part thereof.

"Exhibit 'A'
$102.80.                    Eucheanna, Fla., 3/16/1908.
On Oct. 1st, 1908, after date for value received, I promise

to pay to R. P. Bludworth, or order, the sum of one hundred two & 80/100 dollars, ($102.80) with interest thereon from date until paid at the rate of ten per centum per annum. I further promise and agree that if this note is not paid at maturity and is placed in the hands of an attorney for collection, I will pay all costs of collection including attorney's fee.

J. N. Bray     (Seal)

State of Florida,    ||
County of Walton.  ||   Know all Men by These Presents, that I, J. N. Bray, for and in consideration of the sum of one hundred two & 80/100 dollars ($102.80) to me in hand paid by R. P. Bludworth, the receipt whereof is hereby acknowledged, have granted, bargained and sold and by these presents do grant, bargain, sell and convey unto the said R. P. Bludworth, the following described property, to-wit:—

. . . . . . . . . . . . . . . .

and also all the crop or crops of corn, fodder, hay, peas, potatoes, syrup, cotton and other produce of whatsoever kind or nature that may be grown or raised by or for me on my farm in Walton county, Florida, during the life of this instrument, the lands used as said farm being more particularly described as follows, to-wit:  Place where I now live also the land tended on the Caswell place bought by me, and by or for me on any and all other lands in said county and State during the life hereof.

TO HAVE AND TO HOLD all and singular the same property unto the said R. P. Bludworth, his heirs, executors, administrators and assigns forever, free from all exemption and homestead right or claim of I the said mortgagor, and I do hereby covenant that I am the lawful

owner of the said mortgaged property, that is free of encumbrance.

The condition of the above and foregoing obligation is such that if I the said mortgagor shall well and truly pay or cause to be paid unto the said R. P. Bludworth, or order, the sum of 102.80 dollars, according to the tenor and effect of one certain promissory note, of even date herewith with interest and all costs of collection as therein provided, and shall well and truly pay or cause to be paid to the said R. P. Bludworth, or order, any indebtedness for any advances of money, goods, wares or merchandise that the said R. P. Bludworth may make or cause to be made to said mortgagor during the life hereof, and the recording fees of this mortgage, then and in that event this instrument to be null and void, otherwise to be and remain of full force and effect.

It is distinctly agreed and understood by and between the parties hereto that this instrument is intended to be a mortgage to secure not only the note above mentioned, but also all and every indebtedness of whatsoever character that may be due and owing from the said mortgagor to the said R. P. Bludworth at any time during the life of this mortgage.

It is further stipulated, agreed and covenanted that I the said mortgagor will at my own proper costs and charges do all things necessary to keep perfect and unimpaired the security hereby intended and will pay or cause to be paid all taxes, assessments and penalties against the said property or any part thereof.

It is further agreed and understood and covenanted that upon the failure of the said mortgagor to pay the principal of the said note at maturity, together with the interest thereon, or if, at any time during the life hereof the said mortgagor shall consume, sell, convey, incumber, destroy or otherwise dispose of any of the said mortgaged prop-

erty before the full and complete satisfaction of this mortgage, without notice to the said mortgagee and his consent thereto in writing first had and obtained, or shall in any particular violate any of the stipulations or covenants herein contained, then and in either of those events this mortgage debt is to be immediately due and payable and this mortgage foreclosable at the option of the said mortgagee, and all costs of collection or suit in foreclosure including a reasonable attorney's fee shall be a part of the mortgage debt and a lien upon said mortgaged property.

IN TESTIMONY WHEREOF, the said party has hereunto set his hand and seal on this the 16 day of Mar. A. D. 1908.

Signed, sealed and delivered
in the presence of:
Herman Bludworth.        J. N. BRAY        (Seal)
State of Florida,   ||
County of Walton,  ||   Before the subscriber personally came J. N. Bray to me well known to be the individual described in and who executed the foregoing mortgage and acknowledged to me that he executed the same for the uses and purposes therein set forth.

WITNESS my hand and seal official this 16 day of March, A. D. 1908.

(SEAL)        HERMAN BLUDWORTH,

Notary Public.   My commissions expires Mar. 8, 1910.

Exhibit 'C'

$82.30.        No..........        State of Florida,
April 9th, 1907.                    Walton County.
                                    Eucheanna. P. O.

On or before Oct. 1st, 1907, I promise to pay the Vir-

ginia-Carolina Chemical Company, or order, eighty-two & 30/100 dollars, for 17 sacks of sea gull guano,      Sacks
for 18 sacks Cotton Belt Guano                              Sacks
  " sacks                                                  Sacks
  " sacks                                                  Sacks
sold to me by the said Virginia-Carolina Chemical Company. Should this note be unpaid at maturity and be placed in the hands of an attorney for collection or adjustment then there shall also become due and payable on this note an attorney's fee of ten per cent on the amount of said principal and on interest due and to become due thereon. This note bears interest from its maturity at the rate of 8 per cent per annum until paid.

The consideration of this note is the commercial fertilizer mentioned above and which has been sold to me by the said Virginia-Caroline Chemical Company, and it is expressly understood that such Company has refused to make and does not make any warranty of the quality or value of such fertilizer, or any representations as to its quality or value; and that I am to rely as to such quality and value, solely upon the fact that the laws of said State as to the analysis of such fertilizers have been complied with in so far as is necessary to offering the same for sale in this State. The said fertilizers for which this note is given have been advanced to me for the express purpose of aiding me in carrying on my farming operations during the present year on my farm containing 50 acres more or less in Section 32 Township 2 Range 18 and in said State and County and I hereby sell and convey and pledge unto the said Virginia-Caroline Chemical Company or its assigns to be paid for at the market quotations at the time of the delivery the proceeds of such sale to be retained by the Virginia-Caroline Chemical Company, or its assigns and applied to the satisfaction of this indebtedness; and also upon all indebtedness of any kind that I am due

or may become to R. P. Bludworth during the life of this note.

WITNESS my hand and seal this the 9th day of April, A. D. 1907.

Signed, sealed and delivered
        in our presence:         J. N. BRAY   (SEAL)
    Herman Bludworth.            State of Florida,
                                 Walton County.

Before me a Notary Public in and for Fla. personally appeared J. N. Bray known to me to be the same individual who executed the above written instrument, and acknowledged that he signed, sealed and delivered the same freely and voluntarily, and for the purposes therein stated.

IN TESTIMONY WHEREOF, witness my hand and official seal this the 9th day of April, A. D. 1907.

                    Herman Bludworth.   Commis-
        (SEAL)          sion expires 3/8/10.


For a valuable consideration the Virginia-Caroline Chemical Company hereby assigns, transfers and sets over to R. P. Bludworth or order all of its right, title and interest in and to the within note.

State of Alabama,        C. J. BEANE      (Seal)
County of ——————————.        Manager.'


· To this bill an answer was filed by J. N. Bray, the appellee, admitting the execution of the mortgage on the 16th March, 1908, but denies that he executed it to secure the note of $102.80, and also to secure the balance due complainant by respondent next prior to and at the time of executing the note and for supplies already furnished by complainant to respondent, but alleges that on the 16th March, 1908, Herman Bludworth, son of complainant

came to respondent's house to secure what he called a "guano note" for $102.80, the price of guano that had been then purchased by respondent for the year 1908, the respondent then being sick, and that said note was a lien on his crop for guano, and that nothing whatever was said about any prior or future accounts, and that respondent, believing the representations of Herman Bludworth that he was merely giving a lien on his crop for the guano note, executed the instrument without reading it, or having it read to him, and that it was not the intention of respondent, and was no part of the agreement to secure anything else than the guano note. The answer furthermore alleges that respondent was not indebted to complainant as alleged in the bill. The answer also alleges that the instrument called a mortgage to the Virginia-Carolina Chemical Company for $82.30 was made solely to secure the payment for guano used by respondent in the year 1907, and was not given to secure any accounts or advances made by the complainant, and that nothing whatever was said about including such a clause in the instrument; that respondent relying upon the assertion of complainant that said instrument was only to secure payment for guano, executed said instrument without reading it. The answer further alleges that the respondent has paid all amounts covered by the mortgage and has demanded it of the complainant, but complainant has failed to deliver it.

A replication was filed to this answer and a considerable amount of testimony taken. On final hearing a decree was made finding the equities in favor of the defendant, the appellee here, and the bill was dismissed. A few days subsequent to the making of this decree on the application of the solicitor for the complainant an order was made modifying the former one, dismissing the bill without prejudice to complainant's right to sue at common

law on the note or mortgage executed by J. N. Bray to the Virginia-Carolina Chemical Company on the 9th of April, 1907, which mortgage was not considered by the court in making its final order of dismissal, "as it appeared to the court that the property mentioned in said note or mortgage as security was not in existence at the time of filing the bill." An appeal was taken to this court by the complainant from the final decree.

The assignments of error question the decree of dismissal as contrary to law, and contrary and not supported by the evidence.

We do not think the court erred in its action relating to the mortgage note of J. N. Bray given to the Virginia-Carolina Chemical Company. It is true that as a general rule, when a state or condition is proven to have once existed there is a presumption of its continued existence. But this rule is dependent upon the degree of permanency of the subject-matter under consideration. The presumption does not arise unless the condition or state of facts is such as to be continuous in its nature—in other words so long as is usual with conditions or things of the particular nature under consideration. 22 Am. & Eng. Ency. Law (2nd Ed.) pp. 1238-9. We do not think there is any legal presumption of the existence of field crops in January, 1909, raised in 1907. Ordinarily such crops would be entirely used up or disposed of within the intervening period, and as there was no proof to the contrary, we cannot discover that the Circuit Judge erred in disposing of the mortgage note given to the Virginia-Carolina Chemical Company as he did.

As to the other mortgage dated March 16th, 1908, executed by appellee Bray to appellant Bludworth, it appears from the mortgage itself that the consideration recited therein for its execution was the sum of $102.80, which was the amount of the guano note. It is true that the

defeasance clause recited that it was to be void on the payment of the $102.80, and also any indebtedness for advances &c. that Bludworth may make to the mortgagor during the life of the mortgage, and that immediately after this defeasance clause, it is stated that the mortgage was to secure all and every indebtedness of Bray to Bludworth. But it appears clearly from the testimony of Herman Bludworth that when Bray executed the mortgage that nothing was said to him about securing anything except the note. He admits that Bray, who was an old man seventy-six years old; was sick when he executed the mortgage—did not read it, and it was not read to him. He admits also that he told Bray the mortgage was executed to secure the guano note of $102.80. This substantiates Bray's testimony on this point. It is also stated by Bludworth that the form of this mortgage was one which he was in the habit of using.

In view of the fact that the consideration expressed for the execution of this mortgage is solely the note of $102.80, and the defeasance clause undertakes to require the payment of advances, in addition to the consideration, we are disposed to look to the facts and circumstances attending the execution of the mortgage to ascertain what was really intended by Bray when it was executed. 20 Am. & Eng. Ency. Law (2nd. Ed.) 957; 27 Cyc. 1058; Albion State Bank v. Knickerbocker, 125 Mich., 311, 84 N. W. Rep., 311. And we take this course especially as those matters were set up in the answer, and no exception was taken to it. We are therefore of the opinion that this mortgage was not intended by Bray when he executed it to secure any other debt than the note for $102.80. We think the other matter contained in the mortgage must have gotten into it from the use of a regular form of mortgage used by Bludworth.

Upon the question whether this note for $102.80 was

paid there was a conflict of the evidence, and such a conflict as we think would not warrant us in holding the Circuit Judge in error in dismissing the complainant's bill.

The decree appealed from is affirmed at the cost of the appellant.

WHITFIELD, C. J., and TAYLOR, SHACKLEFORD and PARKHILL, J. J., concur.

COCKRELL, J., absent.