# T. C. DUNN, JR., ET AL., v. SECOND NATIONAL BANK OF HOUSTON, TEXAS, ET AL., EXECUTORS.

No. 6989.   Decided February 9, 1938.
Rehearing overruled March 23, 1938.
(113 S. W., 2d Series, 165.)

*Fulbright, Crooker & Freeman, Vinson, Elkins, Sweeton & Weems, C. A. Sweeton, C. A. Leddy, Leon Jaworski,* and *David T. Searls,* all of Houston, for plaintiffs in error.

The fact that executors, as alleged trustees, were not informed of the trust does not prevent the establishment of the trust. Everett v. Henry, 67 Texas 402; Jackson v. Hughes, 52 S. W. (2d) 687; Clausen v. Jones, 45 S. W. 183, 185.

The proceeds of the policies are not subject to payments made by debtor to his creditor with no direction by the debtor,

in that, being trust funds, they are not to be classed as voluntary payments over which a creditor had a power of direction when payment is made, since Fain Carter's death and his inability to direct after the policies were due puts them in a different category. Nelson Mfgrs. v. Wallace, 66 S. W. (2d) 505; Jones v. Williams, 39 Wis. 300; Hill v. Stampfli, 290 S. W. 522, 524.

The rule forbidding the introduction of extrinsic or parol evidence to vary the terms of a written contract and the statute that the written contract shall constitute the entire contract between the parties are not violated by showing that the beneficiary named in the policy is nevertheless charged with the duty of making a given application of the proceeds, even though he had the right as against the insurance company to collect such proceeds. Wilke v. Finn, 39 S. W. (2d) 836; Reed v. Continental State Bank, 2 S. W. (2d) 426; Persons v. Russell, 212 Ala. 506, 103 So. 543.

*Baker, Botts, Andrews & Wharton,* and *Palmer Hutcheson,* all of Houston, for defendants in error.

The designation of the beneficiaries as coexecutors and cotrustees was not ambiguous, and was clearly intended to designate them only in their capacity as representatives of the father's estate, and not as trustees of the insurance policies and there was no room for parol testimony to enlarge their duties. Standard L. & Acc. Ins. Co. v. Taylor, 34 S. W. 781; Fletcher v. Williams, 66 S. W. 860; Washington L. Ins. Co. v. Berwald, 97 Texas 111, 76 S. W. 442; Spann v. Cochran, 63 Texas 240; Beck v. Beck, 90 S. W. (2d) 285.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Defendants in error, Second National Bank of Houston, Texas, and Mrs. Carrie B. Carter, as independent executors and trustees of the estate of S. F. Carter, Sr., deceased, sued plaintiffs in error T. C. Dunn, Jr., and L. J. Walling, and also Second National Bank of Houston, Texas, as independent executor and trustee of the estate of S. F. Carter, Jr., deceased, for the recovery of the principal, interest, and attorney's fees on three promissory notes executed by Houston Development Company and endorsed by Dunn, Walling and S. F. Carter, Jr. One note in the principal sum of $98,513.50 is payable to Second National Bank of Houston, Texas, another in the principal sum of $35,-000.00 is payable to South Texas Commercial National Bank

of Houston, Texas, and the third note in the principal sum of $30,000.00 is payable to First National Bank of Houston, Texas. S. F. Carter, Sr., father of S. F. Carter, Jr., had executed to the three banks written guaranties of the payment of these notes, and after his death the notes were paid by his executors and transferred to his estate. The trial court's judgment was that defendants in error recover of the estate of S. F. Carter, Jr., $253,042.48 but that they take nothing against plaintiffs in error Dunn and Walling. On appeal by defendants in error the Court of Civil Appeals reversed the trial court's judgment as to Dunn and Walling and rendered judgment in favor of defendants in error against Dunn and Walling for the amount of the principal, interest and attorney's fees of said notes. Associate Justice LANE dissented. 84 S. W. (2d) 766.

The controversy is with respect to the proceeds of two policies, issued by Ætna Life Insurance Company, insuring the life of S. F. Carter, Jr., (known as Fain Carter) for $200,000.00 collected by defendants in error, which plaintiffs in error contend should have been applied to the payment of the three notes upon which the suit is brought. Fain Carter for a number of years prior to his death was engaged in the business of developing and improving real estate under the trade name of Fain Carter Home Building Company. He organized a corporation, Houston Development Company, with a capital stock of $10,000.00, to engage in the same or similar business and acted as president, general manager and director of the corporation until his death, owning 50% of the stock. Plaintiffs in error Dunn and Walling owned the other half of the stock and were directors of the corporation. They were for many years intimate friends of Fain Carter. The three notes of the Houston Development Company upon which this suit was brought, aggregating approximately $164,000.00 principal and representing renewals of prior notes, were guaranteed to the three banks by S. F. Carter, Sr., and endorsed by Fain Carter, Dunn and Walling. Houston Development Company was directly indebted to S. F. Carter, Sr., on account of its three notes payable to him in the total principal sum of $23,500.00. These three notes were endorsed by Fain Carter but not by Dunn and Walling. On January 12, 1928, Fain Carter, Dunn and Walling executed a written instrument by which they guaranteed to S. F. Carter, Sr., the payment by Houston Development Company of any indebtedness which it might then or thereafter owe to S. F. Carter, Sr., up to the sum of $100,000.00. S. F. Carter, Sr., died March 1, 1928, leaving a will in which he appointed defendants in error independent executors and trustees of his estate. With Mrs.

Carter's written consent Second National Bank exercised full control and management of the estate.

Fain Carter procured the issuance by Ætna Life Insurance Company on May 8, 1928, of two policies insuring his life, one for $170,000.00 and one for $30,000.00, designating as beneficiary in his written application "The estate of S. F. Carter, Sr., The Second National Bank of Houston, Texas, and Carrie B. Carter (mother) co-executor and co-executrix and co-trustees." The policies when issued promised to pay the amounts stipulated "to the beneficiary, the executors and administrators or assigns of Samuel F. Carter, Sr., father of the insured." Each policy gave to the insured the right to change the beneficiary as often as desired, such change to take effect on receipt at the home office of the company of a written request accompanied by the policy for endorsement. The first premium on the larger policy, amounting to $1,608.20, was paid by two checks, one for $808.20, the check of Fain Carter Home Building Company (Fain Carter's trade name), and the other for $800.00, the check of Houston Development Company. The first premium on the other policy was paid by the check of Houston Development Company for $654.00. George M. Irving, assistant trust officer of Second National Bank, testified that Fain Carter brought the policies into the bank, left them with him and express gratification that he had been able to get the insurance as additional protection to his father's estate, and testified further that after Fain Carter's death he took the policies out of the safety deposit box of the S. F. Carter, Sr., estate. A memorandum made by Mr. Ellis, the trust officer of Second National Bank, who was dead when the case was tried, stated that these policies and other policies on Fain Carter's life were left by Fain Carter in the trust department of the bank for safekeeping.

S. F. Carter, Sr., was interested in Fain Carter's business affairs, supplying him with money and credit, endorsing for him and helping him to procure loans, and the friendly and close relation between the father and son continued until the father's death. It is shown that Fain Carter at his father's death was liable to the estate in the total amount of approximately $700,000.00, including the notes of Houston Development Company herein sued upon, on obligations signed by Fain Carter as maker or endorser in favor of S. F. Carter, Sr., and on obligations in favor of third parties to whom S. F. Carter, Sr., was liable by guaranty or endorsement.

In addition to the $200,000.00 of life insurance in the Ætna Life Insurance Company, Fain Carter at the time of his death on October 18, 1928, had policies of life insurance for $110,-

000.00 payable to the estate of his father, a policy for $57,500.00 payable to his own estate, and a policy for $5,000.00 payable to his mother. Second National Bank, as executor of the estate of S. F. Carter, Sr., collected as insurance on the life of Fain Carter the total sum of $310,000.00, being the proceeds of the two policies issued by the Ætna Life Insurance Company and of the additional policies for $110,000.00. It applied the money so collected to the payment of various debts owed by Fain Carter to S. F. Carter, Sr., or to the estate of S. F. Carter, Sr., and to other obligations of Fain Carter that the estate of S. F. Carter, Sr., had been required to pay by reason of endorsement or guaranty of such obligations by S. F. Carter, Sr. No part of the proceeds of the insurance on the life of Fain Carter was applied on the three notes of the Houston Development Company endorsed by Fain Carter, Dunn and Walling, but three and a half years after the collection of the life insurance Second National Bank and Mrs. Carter as executors and trustees of the estate of S. F. Carter, Sr., filed this suit on the three notes against plaintiffs in error Dunn and Walling, and against Second National Bank as executor and trustee of the estate of Fain Carter. It was alleged and proven that both Houston Development Company and the estate of Fain Carter were insolvent.

Plaintiffs in error Dunn and Walling in their answers pleaded in detail the facts as to the organization of Houston Development Company, the ownership of its stock, the management and operation of the company by Fain Carter, the execution of the three notes herein sued upon, and the endorsements and guaranties of them, and pleaded particularly that pursuant to a resolution of the board of directors of Houston Development Company and according to the intention of Fain Carter, the two policies of life insurance in the Ætna Life Insurance Company were procured and caused by Fain Carter to be issued for the purpose of protecting and securing Houston Development Company's indebtedness evidenced by the said three notes, as well as Dunn and Walling, from loss or liability by reason of their endorsements of the notes, and that the premiums on the policies or the greater part thereof were paid by Houston Development Company; and they pleaded that the collection of the proceeds of the policies by Second National Bank as executor of the estate of S. F. Carter, Sr., had the effect of satisfying and paying the said notes, then owned by the bank as such executor. They pleaded further that by reason of the same facts the beneficiaries named in the two policies became trustees to collect and apply the proceeds in accordance

with the intention of Fain Carter to the satisfaction of the three-notes.

Defendants in error in reply pleaded by supplemental petition that the two policies of insurance issued by the Ætna Life Insurance Company designated the executors of the estate of S. F. Carter, Sr., as beneficiaries without any restriction or qualification and were delivered to them without any limitation upon their rights as such to use the proceeds of the policies to retire any obligation or obligations upon which Fain Carter was liable at the time of his death, either as maker or endorser or otherwise, in favor of S. F. Carter, Sr., or in favor of third parties to whom S. F. Carter, Sr., was also liable by guaranty or endorsement, and that they had the right, as they did, to apply the proceeds of the policies in satisfaction of obligations other than those upon which the suit was brought.

The jury in answer to a special issue found that "in the procuring of the Ætna insurance policies Fain Carter, Jr., had the purpose and intention of protecting the S. F. Carter, Sr., estate and T. C. Dunn and L. J. Walling against the payment of the obligations herein sued upon in the event of the death of Fain Carter, Jr." The jury further found in answer to other special issues that Houston Development Company paid $800.00 of the first premium on the larger of the two life insurance policies and that such payment was made pursuant to the purpose and intention of Fain Carter, Jr., in procuring the Ætna Life Insurance Company policies to protect the S. F. Carter, Sr., estate and T. C. Dunn and L. J. Walling against the payment of the obligations herein sued upon.

It is apparent from the foregoing statement of the nature of the case and the important facts that the principal question presented is: May it be shown by extrinsic evidence that a debtor who insured his life for the protection of a creditor intended and procured the policy to protect the creditor against loss on particular obligations, when the policy names the creditor as beneficiary without specifying the obligations for which it is given as security, and the obligations of the insured debtor to the creditor beneficiary at the time of the death of the debtor exceed the insurance in amount?

1 The strict rule established by the decisions in this State as to the right of a creditor beneficiary to retain the proceeds of life insurance has a direct, and perhaps controlling, bearing upon the solution of the question. According to the pleadings of both parties, the substance of which has been stated, and the undisputed evidence, the estate of S. F. Carter, Sr., was named

as a creditor beneficiary in the two policies, one party taking the position that the insurance was procured to protect the estate from liability on the three notes of Houston Development Company endorsed by Fain Carter, Dunn and Walling and guaranteed by S. F. Carter, Sr., and the other contending that the insurance protected the estate generally on any and all obligations of Fain Carter for which the estate was liable. In Texas a creditor named as a beneficiary in a policy of life insurance may after the death of the insured collect the amount due according to the terms of the policy but he may retain for himself only the amount of the debt due at the death of the insured, together with any such amount as he may have paid to preserve the policy. The remainder will be given to the estate of the insured. If at the time of the death the amount of the debt and premiums advanced have been paid, the whole of the proceeds of the policy will go to the estate of the insured. The creditor named as beneficiary may collect the policy from the insurer even though it may exceed the debt in amount and even if the debt has been paid, but he holds the proceeds of the policy so collected in excess of what is required to pay the debt as trustee for the estate of the insured. Equitable Life Ins. Co. v. Hazlewood, 75 Texas 338, 12 S. W. 621; Cheeves v. Anders, 87 Texas 287, 28 S. W. 274; Andrews v. Union Central Life Ins. Co., 92 Texas 584, 50 S. W. 572; Wilke v. Finn, (Com. App.) 39 S. W. (2d) 836. See also Crotty v. Union Mutual Life Ins. Co, 144 U. S. 621, 12 Sup. Ct. 749, 36 L. Ed. 566; 37 C. J., p. 569, Sec. 328.

2  It is always necessary, therefore, when a policy names a creditor as beneficiary to resort to extrinsic evidence in order to determine whether there is an unpaid debt and what amount is justly due thereon. The policy must be construed as intended to protect the creditor only to the extent of the unpaid indebtedness existing at the time of the death. We look to evidence outside of the policy for these facts in order to carry out the lawful intention for which the policy was issued. Having gone beyond the evidence afforded by the policy to this extent, may we not in order to fulfill the true or exact intention for which the policy was procured by the insured resort to extrinsic evidence proving that he intended the insurance to protect his named beneficiary against loss on account of some particular obligation or obligations? The settled rule above stated opens the inquiry as to the existence and the amount of the debt or debts secured by the policy. The insurer is not concerned in the application or use of the proceeds after it has paid them to the designated beneficiary. But, the insured who caused the

policy to be issued was concerned, and it seems that the inquiry, once opened and which necessarily proceeds by the aid of extrinsic evidence, should go to the extent of ascertaining his true intention to the end that the proceeds of the policy be applied to the payment of the debt which he intended them to pay, if this can be done without contradicting or varying the terms of the policy.

3 The terms of the policy in designating the estate of S. F. Carter, Sr., as beneficiary mean nothing more than that the intention is to secure or protect the estate against loss on account of debt or obligation of the insured to the estate. Such terms are not contradicted, varied or enlarged by proof that the insured intended the policy to protect the beneficiary against loss on account of a particular debt or obligation. Evidence of this character only makes more certain and definite the intention which the policy expresses in general language. It carries no contradiction of the expressed intention but merely defines it more exactly. Looking to the ultimate purpose of the policy, the debts to be paid by the proceeds are a subject matter of the contract of insurance. Because the contract in naming the estate as beneficiary uses broadly descriptive terms of such subject matter, resort to extrinsic proof is justified in an effort to ascertain the true or particular subject matter. Smith v. Texas & New Orleans Ry. Co., 101 Texas 405, 409-410, 108 S. W. 819; Southwest National Bank v. Employers' Indemnity Corporation, (Com. App.) 12 S. W. (2d) 189.

The same question in principle is presented as to the admissibility of extrinsic evidence to prove the debt intended to be secured by a mortgage that contains an indefinite description or no description of the debt. It is held that parol evidence is admissible to prove what debt was intended to be secured. Moses v. Murgatroyd, 1 Johnson Ch. N. Y. 119, 7 Am. Dec. 478; Albion State Bank v. Knickerbocker, 125 Mich. 311, 84 N. W. 311; Jones on Mortgages, (8th ed.) Vol. 1, Sec. 434, pp. 555-556; 41 C. J., Sec. 347, pp. 455-456. In Jones v. New York Guaranty & Indemnity Co., 11 Otto (U. S.) 622, 25 L. Ed. 1030, the court, against insistence that its view should be limited to the face of the mortgage and the obligation, looked to all the evidence in the record and determined from it that a mortgage apparently given to secure the debt of an individual was intended to secure and did secure the debt of a corporation. If extrinsic evidence is admissible to prove that a mortgage which does not describe the debt was intended to secure a particular debt or obligation, then extrinsic evidence is also admissible to prove that a life insurance policy procured by the debtor

and payable to a creditor beneficiary, but containing no description of the debt, was intended to protect the beneficiary against loss on a particular obligation.

4 It is our opinion, therefore, that for the reasons stated the trial court properly permitted proof to be made that Fain Carter procured the insurance with the intention that it should protect the beneficiary named in the policies, and incidentally plaintiffs in error as endorsers, against loss on the particular obligations upon which this suit was brought, and that it was the duty of Second National Bank to apply the proceeds of the policies when collected to the payment of those obligations.

The same conclusion is reached by regarding the action of Fain Carter, in procuring the policies with the intention above stated, as having the effect of making Second National Bank (his father's executor) trustee for the benefit of itself, as executor, and for the benefit of Dunn and Walling in collecting the insurance and applying the proceeds to the satisfaction of the notes. It is settled by the decisions in this State and by the weight of authority in other states that a trust may be impressed upon a life insurance policy or upon the proceeds of a life insurance policy in the hands of a named beneficiary and that proof of such trust may be made by parol. Hughes v. Jackson, 125 Texas 130, 81 S. W. (2d) 656; Id., (Civ. App.) 52 S. W. (2d) 687. Clausen v. Jones, 18 Texas Civ. App. 376, 45 S. W. 183; Rape v. Gardner, 54 S. W. (2d) 594; Donithen v. Independent Order of Foresters, 209 Pa. 170, 58 Atl. 142; American Life and Health Insurance Company v. Robertshaw, 26 P. St. 189; Crews v. Crews, 113 Ky. 152, 67 S. W. 276; Kerr v. Crane, 212 Mass. 224, 98 N. E. 783, 40 L. R. A. (N. S.) 692, 696; 65 C. J., Sec. 70, pp. 300-301.

5 Some of the cases above cited differ from the instant case in the fact that in them the trust arose in whole or in part from the agreement of the beneficiary, whereas in the instant case it was found by the jury that Second National Bank had no notice of Fain Carter's intention that the proceeds of the insurance should be applied to the particular obligations. Notice to the trustee, however, is not one of the elements essential to the creation of a parol trust. Clausen v. Jones, 18 Texas Civ. App. 376, 45 S. W. 183; Donithen v. Independent Order of Foresters, 206 Pa. 170, 58 Atl. 142, 143; Perry on Trusts, (6th ed.) Vol. 1, Sec. 105, p. 137; Restatement of the Law of Trusts, Vol. 1, Sec. 24, subsec. 6, pp. 75-76; Sec. 35, pp. 113-114.

6 A beneficiary may, of course, lose his rights on account of a purchase for value by one who has no notice of the trust or

he may be estopped by his acts relied upon by another to his injury. Defendant in error Second National Bank does not occupy the position of innocent purchaser. There is neither pleading nor proof that it has been misled to its injury by any acts of plaintiffs in error. It does not even appear that it has suffered or will suffer loss on account of the application of the proceeds of the insurance to notes other than those for which they were intended. The notes to which the application of the proceeds was made were notes of Fain Carter and notes of Houston Development Company and according to the pleadings and the evidence both Fain Carter and Houston Development Company were insolvent. Furthermore, Second National Bank as executor of the estate of S. F. Carter, Sr., recovered judgment in this case against itself as executor of the estate of Fain Carter for $253,042.48, from which judgment no appeal was taken.

7 Defendants in error make the contention that extraneous evidence was not admissible to prove a trust in the policies or their proceeds for the benefit of the estate of S. F. Carter, Sr., and plaintiffs in error, because the policies designated Second National Bank and Mrs. Carter trustees, invoking the rule that if a trust is declared in writing parol proof will not be permitted in contradiction of the intention expressed upon the face of the instrument itself. No trust is declared in the face of the policies. Second National Bank and Mrs. Carter are not made trustees by the policies. They are merely described as executors and trustees of the estate of S. F. Carter, Sr. It was his will, not the policies, that made them executors and trustees and conferred upon them and defined their powers and duties as such.

8 Most of the authorities relied upon by defendants in error, as for example American National Insurance Company v. Driver, 52 S. W. (2d) 345 (application for writ of error refused), are cases in which it is held that in the absence of fraud or mistake evidence may not be admitted to prove that the beneficiary is a person other than the beneficiary named in the policy, or cases in which it is held that a change in the beneficiary may not be made in any other manner than that provided in the policy. The estate of S. F. Carter, Sr., was named as beneficiary in the policies, its insurable interest being that of creditor. No change of beneficiary was made or attempted. That estate receives the benefits of the proceeds of the policies when they are applied in satisfaction of the three notes of Houston Development Company, the payment of which S. F. Carter, Sr., guaranteed. We believe it is apparent, from what has been said above as to the rights of a creditor beneficiary and the

proof that he must make in order to retain the proceeds of life insurance, that the conclusion expressed herein is not in conflict with the statutes (Articles 4732 and 5050, R. C. S. 1925) providing that the application shall be made a part of the policy and that the application and the policy shall contain and constitute the entire contract between the parties; and that it is further apparent that there is no impairment of what in some of the decisions is referred to as the vested right of the designated beneficiary after the death of the insured. The statutory provisions as to the contract have reference primarily to the relations between the insurer and the insured. Jackson v. Hughes, 52 S. W. (2d) 687, 689; Northern Life Insurance Co. v. Burkholder, 131 Ore. 537, 283 Pac. 739. They intend that the obligation of the insurer to make payment, the obligation of the insured to pay premiums and the rights of the insured and of the beneficiary to collect from the insurer shall be those set out in the policy. The vested right of a creditor beneficiary is, as has been shown, to collect the proceeds of the policy and to retain them only for the payment of the insured's obligation or obligations to him. The right of the beneficiaries to collect the full amount of the insurance, as provided by the terms of the contract, is recognized. Their vested right is not impaired when the proceeds are applied to the payment of the insured's obligation to them on account of his endorsement of the three notes and the guaranty of them by S. F. Carter, Sr.

9 Defendants in error take the position that, as representing a beneficiary creditor, they had the right to apply the proceeds of the policies at their election to any debt or debts of Fain Carter, inasmuch as the insured debtor gave no directions for a specific application. The right of a creditor to make application of a payment voluntarily made by the debtor arises upon and because of the failure of the debtor when making the payment to direct the application. Proctor v. Marshall, 18 Texas 63, 67. It seems that it would not arise when the debtor, as here, has no opportunity when the payment is made to direct the application. 48 C. J., Sec. 97, p. 650. Furthermore, the right of the creditor to make such application of the payment as he desires is not absolute. It will be denied for the protection of the superior equity of a third party. N. O. Nelson Manufacturing Co. v. Wallace, 66 S. W. (2d) 505 (application for writ of error refused) ; Sioux City Foundry & Manufacturing Co. v. Merten, 174 Iowa 332, 156 N. W. 367, L. R. A. 1916D, 1247. Since the insurance was procured by Fain Carter for the protection of plaintiffs in error on their endorsement of the three notes of Houston Development Company, as well as for the

protection of S. F. Carter, Sr., on his guaranty, and the greater part of the premiums was paid by Houston Development Company and no part of them by S. F. Carter, Sr., or by his estate, and since defendants in error are not in the position of an innocent purchaser, it is our opinion that it would not be equitable to permit defendants in error, to the prejudice of plaintiffs ' in error, to apply the proceeds of the insurance to the payment of other obligations than those for which they were intended.

**10** While the statement of facts contains evidence from which it might be inferred that the two policies were intended as' security for any or all of Fain Carter's obligations to his father's estate, the finding of the jury that he intended them for the obligations on which this suit was brought is supported by clear and convincing evidence. On January 15, 1928, after the three notes had been executed by Houston Development Company, endorsed by Fain Carter, Dunn and Walling, and guaranteed by S. F. Carter, Sr., the directors of Houston Development Company adopted a resolution that Fain Carter "be empowered to insure his life for the protection of indebtedness of the Houston Development Company. and the endorsements of the directors of the company, the amount not to exceed $200,00.00, and pay the premiums out of the funds of the Houston Development Company." L. B. Jones and C. O. Woolsey, two disinterested witnesses, testified that Fain Carter told them of his desire to procure life insurance in the amount of $200,000.00, pursuant to the said resolution, for the protection of Dunn and Walling on their endorsements of the notes and discussed with them the selection of an agent through whom application for the insurance might be made. It is shown by their testimony that after a delay caused by inability to reach an agreement with the agent or agents first suggested Mr. Rasmussen, local agent of Ætna Life Insurance Company, was selected to take the application. Rasmussen, also a disinterested witness, testified that when Fain Carter discussed with him the making of application for the policies, which were issued a short time thereafter, he told him that he was taking out the insurance for the protection of Dunn and Walling and that he expressed in positive language his anxiety about the condition in which they would be left if he should die without the insurance. Jones testified also to a conversation after the policies were issued, in which Fain Carter told Dunn that he had obtained his life insurance policies and expressed to Dunn and Jones his gratification that Dunn was protected and would not lose anything by reason of the endorsements.

The trial court did not err in admitting in evidence the resolution of the board of directors of Houston Development Company. Article 3716, Revised Civil Statutes of 1925, prohibiting under certain conditions testimony of a party as to a transaction with the testator or intestate, has no application to a resolution of the board of directors of a corporation, even though the testator or intestate may have been a member of the board. The resolution of the board is an act of the corporation, not a transaction with a member of the board.

11 There was no error in the trial court's refusal of special issues requested by defendants in error submitting the question whether the two Ætna policies were procured pursuant to an agreement between Fain Carter and Second National Bank evidenced by two letters written five or six days before the policies were issued. The requested issues are not supported by pleading and they are evidentiary rather than ultimate issues. The letters do not contradict the jury's finding as to the intention of Fain Carter. The agreement evidenced by the letters was that Second National Bank would permit Fain Carter to withdraw three policies of life insurance held by it in order that he might procure a loan of about $11,000.00 on them and that Fain Carter would take out at least $25,000.00 additional life insurance to offset the loan and for the protection of the estate's indebtedness on account of endorsements or guaranties for him. The procuring of the Ætna policies for the application of their proceeds to the three notes guaranteed by S. F. Carter, Sr., on which this suit is brought, was the taking out of additional insurance for the protection of the estate's indebtedness on account of guaranties for Fain Carter.

All of the assignments of error presented in the brief of defendants in error in the Court of Civil Appeals have been carefully considered, and we find reversible error in none of them.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion adopted by the Supreme Court February 9, 1938.

Rehearing overruled March 23, 1938.