FIRST NATIONAL BANK OF
AMARILLO, Appellant,

v.

Joyce Elaine BAUERT, Individually and
as Independent Executrix of the Estate
of Anthony Edward Bauert, Deceased,
Appellee.

No. 9282.

Court of Appeals of Texas,
Amarillo.

Sept. 23, 1981.

Gibson, Ochsner & Adkins, John T. Huffaker, Amarillo, for appellant.

Sanders, Saunders, Brian, Finney, Thomas & Smith, Ronald D. Nickum and Paul R. McWilliams, Amarillo, for appellee.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

In this appeal, the First National Bank of Amarillo is the appellant, and Joyce Elaine Bauert, Individually and as Independent Executrix of the Estate of Anthony Ed-

ward Bauert, deceased, is the appellee. Mrs. Bauert brought this action against the Bank and C. J. Lightfoot to recover the proceeds of a life insurance policy on the life of Mr. Bauert. Beginning in the spring of 1978 and continuing to February of 1979, Mr. Bauert and Mr. Lightfoot operated a partnership business named "Indian Enterprises d/b/a Construction Corner." The primary business endeavor of the partnership was the sale of steel buildings. Each of the partners took out a policy of insurance on his life in the amount of $200,000. Lightfoot was the named beneficiary of the insurance policy on the life of Mr. Bauert; Bauert was the named beneficiary of the policy on Lightfoot's life. The premiums for the insurance were paid from the partnership bank account. Bauert accidentally died before the insurance policies were delivered.

At the time of Mr. Bauert's death, the partnership owed the Bank $48,000.00 plus interest. Mr. Lightfoot, individually and with persons other than Mr. Bauert, owed the Bank an additional sum of approximately $400,000.00. After Mr. Bauert's death, Mr. Lightfoot assigned to the Bank the proceeds from the insurance policy on Mr. Bauert's life. Among other things, Mrs. Bauert's action is grounded on a constructive trust theory. The Bank claims the proceeds by virtue of its assignment from Lightfoot, the named beneficiary.

On the Bank's motion, the trial court rendered partial summary judgment for the Bank and decreed that the Bank recover the sum of $48,000.00 plus interest.[1] The remainder of the action was tried by the court with a jury. In response to special issue number one, the jury found that Anthony E. Bauert and C. J. Lightfoot, as partners, orally agreed that, in the event of the death of either of them, the other, as beneficiary of the life insurance on the deceased partner, would utilize the proceeds of the life insurance to pay partnership indebtedness and pay the remaining proceeds to the widow and heirs of the deceased partner. The court rendered judg-

ment that Mrs. Bauert recover the remaining proceeds from the insurance policy in question. The Bank appeals from this judgment. We affirm.

Initially, the Bank contends that the trial court erroneously failed to grant its motion for an instructed verdict, because an express trust is required "to alter the beneficiary designation of the insurance policy in question, and that there is no evidence of an express trust." Mrs. Bauert maintains that the court correctly overruled the Bank's motion, because she pled and proved her constructive trust theory of recovery. We agree with Mrs. Bauert's position.

From the record, it is undisputed that Mr. Lightfoot assigned the proceeds of the policy to the Bank and paid none of such proceeds to Mrs. Bauert or to Mr. Bauert's estate. In *Dunn v. Second Nat. Bank of Houston*, 131 Tex. 198, 113 S.W.2d 165, 171, the court stated:

> It is settled by the decisions in this state and by the weight of authority in other states that a trust may be impressed upon a life insurance policy or upon the proceeds of a life insurance policy in the hands of a named beneficiary and that proof of such trust may be made by parol.

*Rape v. Gardner*, 54 S.W.2d 594, 595 (Tex. Civ.App.—Eastland 1932, no writ), is to the same effect. The Bank acknowledges the above stated principle from *Dunn*. However, it argues that the principle is limited to express trusts. We disagree.

By its nature, the constructive trust remedy is broad and flexible. *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex.1974). Being remedial in character, constructive trusts have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. *Id.* Depending on the circumstances, a transaction may provide the basis for a constructive trust where one party to that transaction holds funds which, in equity and good conscience, should be possessed and owned by another. *Id.* Furthermore, there is no unyielding formula to

---

1. On appeal, the parties do not complain of this action by the trial court.

which a court of equity is bound in decreeing a constructive trust, because the equity of the transaction will necessarily shape the measure of the relief granted. *Id.* Given these principles, we conclude that the jury's finding in response to special issue number one supports the trial court's judgment. Thus, we overrule the Bank's first contention.

■ Next, the Bank maintains that the evidence was legally insufficient to support the submission of special issue number one. The legal insufficiency attack fails if there is any probative evidence to support the challenged issue. *Air Conditioning v. Harrison-Wilson-Pearson*, 151 Tex. 635, 253 S.W.2d 422, 425 (1952); *Crisp v. Southwest Bancshares Leasing Co.*, 586 S.W.2d 610 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.). Evidence has probative force when it is more than a mere surmise or suspicion and serves to prove the asserted proposition. *Gray v. Baker & Taylor Drilling Co.*, 602 S.W.2d 64, 65 (Tex.Civ.App.—Amarillo 1980, writ ref'd n. r. e.).

■ The evidence shows that in October 1978 Mr. Lightfoot, Mr. Bauert, Mr. Baker (the partnership's accountant), Mr. Collins (the partnership's attorney), an official from the Bank, and the insurance agent who sold the policy in question met in Mr. Collins' office to discuss the partnership, a proposed partnership agreement, and insurance on the life of the partners. Prior to and at the meeting, Mr. Lightfoot and Mr. Bauert had different thoughts as to how the proceeds from the insurance policies should be used in the event of the death of one of the partners. However, Mr. Baker testified that the partners ultimately agreed that the survivor would use the proceeds to pay the partnership's indebtedness, with any excess funds going to the heirs of the deceased partner. In part, Mr. Baker testified as follows:

Q. (By Mr. Nickum) As best you can remember, I want you to repeat to the jury what these two gentlemen finally told you their agreement was.

A. After we had talked about it and Tom had chosen the particular type of insurance policy and the benefits, then, we got down to what would be used with the proceeds.

And so again we went over two different options, and the last option was the option where the money would go the the surviving partner, he would pay off the bank indebtedness, and then it would go to the heirs.

Q. And was that what they both told you they wanted at that time?

A. Charlie said, 'Write the policy,' and Tony agreed.

The above quoted testimony and other evidence to the same effect is legally sufficient to support the submission of special issue number one. We overrule the Bank's legal insufficiency challenge.

■ The Bank further contends that the evidence is factually insufficient to support the jury's answer to special issue number one. In support of this contention, the Bank argues that the imposition of a parol trust on the proceeds of a life insurance policy must be made by clear and convincing evidence and that we should decide its factual insufficiency challenge under that standard.

In Texas, it is settled that in ordinary civil cases the party having the burden of proof must establish his cause of action by a preponderance of the evidence only. *See State v. Turner*, 556 S.W.2d 563 (Tex.1977). In certain types of cases, the early courts imposed a stricter standard, requiring that proof be clear and satisfactory or clear and convincing. *Id.* at 565. These cases concerned charges of fraud and mistake when relied upon to justify reformation; rescission or cancellation of a written estimate; or actions to engraft a parol trust or conditions upon a written instrument. *Id.* However, the courts in more recent cases have concluded that in ordinary civil cases the requirement of clear and convincing evidence is merely another method of requiring that a cause of action be supported by factually sufficient evidence. *Id.; Meadows v. Green*, 524 S.W.2d 509, 510 (Tex.1975); *Omohundro v. Matthews*, 161

Tex. 367, 341 S.W.2d 401, 411 (1960); and *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206, 209 (1950).

We recognize that, in *State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979), our Supreme Court acknowledged and adopted a clear and convincing evidence standard "in those civil proceedings brought under state law to commit an individual for an indefinite period to a state mental hospital." The court explained that the clear and convincing standard is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. This standard was adopted on remand to conform with the holding of the Supreme Court of the United States in *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323, that, in civil commitment hearings, individuals must be afforded the protection of the fourteenth amendment of the United States Constitution, which requires evidence which is more than a preponderance before a state can deprive an individual of his liberty. In the case of *In Interest of G.M.*, 596 S.W.2d 846 (1980), the court extended the application of this clear and convincing standard to civil proceedings involving the involuntary termination of the parent-child relationship. We observe that *G.M.* also presented an issue of constitutional dimension.

From *Turner, Meadows, Omohundro, Sander, Addington* and *G.M.*, we discern that, under state law, the standard of proof in ordinary civil cases is a preponderance of the evidence, and that in certain civil proceedings, such as *Addington* and *G.M.*, which present issues of federal constitutional dimension, the standard of proof is clear and convincing evidence, as defined in *Addington*. The case before us is an ordinary civil case, and we must decide the Bank's factual insufficiency challenge by the preponderance of the evidence standard.

Of the six persons present at the October 1978 meeting, only Mr. Baker and the insurance agent testified at the trial. The insurance agent's testimony did not directly contradict Mr. Baker's testimony concerning the partners' agreement for the application of the insurance proceeds. At the trial, the central issue in regard to Mr. Baker's testimony concerned his credibility.

Obviously, the jury believed all or parts of Mr. Baker's testimony concerning the agreement. This it had a right to do. *See Pickens v. Baker*, 588 S.W.2d 406, 409 (Tex. Civ.App.—Amarillo 1979, no writ). As this court and other courts have stated, the trier of the facts is in the best position to judge credibility. *Id.* Among other things, the witness's believability is ascertained from his demeanor as well as from the words spoken. The trier of the facts forms its fundamental impressions from the total activity in the trial arena. *Id.* We are not inclined to "second-guess" the fact finder on credibility. Nevertheless, in deciding the factual insufficiency issue, we must consider the evidence in support of and contrary to the jury's challenged answer to ascertain if that answer is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Having done so in this instance, we overrule the Bank's factual insufficiency challenge.

The Bank says the trial court abused its discretion by failing to grant the Bank's first motion for continuance. We disagree. The granting or refusal of a motion for continuance lies in the sound discretion of the trial court. *Hernandez v. Heldenfels*, 374 S.W.2d 196, 202 (Tex.1963). Absent an abuse of discretion, the trial court's determination will not be disturbed on appeal. *Marriage of Higley*, 575 S.W.2d 432, 437 (Tex.Civ.App.—Amarillo 1978, no writ).

The ground for the Bank's motion was the absence of Mr. Lightfoot as a witness. Rule 251 of the Texas Rules of Civil Procedure provides, in part, that a continuance shall not be granted except for sufficient cause supported by affidavit. Rule 252 states, with regard to application for continuance, that:

> If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, *and that he has used due*

*diligence to procure such testimony, stating such diligence*, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done.....

(Emphasis added).

▮ In its motion, the Bank claimed that it could not "safely go to trial because of the present physical and emotional condition of the defendant, C. J. Lightfoot." The Bank further alleged that Mr. Lightfoot as a witness would have given testimony material to the issues in the case. In its brief, the Bank states that "an attempt was made to obtain a statement from Mr. Lightfoot's doctor to confirm [Mr. Lightfoot's physical condition]," that "on the afternoon before the trial, the attorney for the Bank called upon Mr. Lightfoot's regular physician Dr. Chandler, with authorization from Mr. Lightfoot," and that "although Dr. Chandler had earlier indicated that he would execute an affidavit regarding Mr. Lightfoot's physical condition, upon seeing him, he refused to do so." In an affidavit attached to the motion, the Bank's attorney states:

> After obtaining the medical authorization I called upon Dr. Richard Chandler, Mr. Lightfoot's physician to ask Dr. Chandler to execute an affidavit regarding Mr. Lightfoot's condition. Dr. Chandler refused to execute the affidavit. I determined in my conversation with him that Mr. Nickum had called him this morning. I *assumed* that Dr. Chandler's refusal to execute the affidavit was, in part, based upon Mr. Nickum's threat to depose Dr. Chandler on the affidavit.

(Emphasis added).

The record shows that this action was filed on 14 March 1979. The Bank answered on 9 November 1979. The case went to trial on 22 July 1980. In its brief, the Bank states that although Mr. Lightfoot's deposition had been taken on 10 January 1980,

Mrs. Bauert filed her Third Amended Original Petition on 16 April 1980, and that "[c]onsequently, there was not an opportunity to fully develop Mr. Lightfoot's testimony on the specific issues involved in this case by deposition." However, there is nothing in the record to show that the Bank made any effort to obtain the testimony of Mr. Lightfoot during the period from 16 April 1980 to 22 July 1980. Furthermore, the Bank's allegations concerning Mr. Lightfoot's physical condition are not substantiated by medical evidence. Moreover, the record fails to show that the Bank took action to obtain, by deposition or otherwise, the testimony of Dr. Chandler concerning Mr. Lightfoot's alleged physical condition. Under these circumstances, we are unwilling to say that the Bank used due diligence to obtain the testimony of Mr. Lightfoot and that the trial court abused its discretion by refusing to grant the Bank's motion for continuance. The Bank's contention is overruled.

▮ Lastly, the Bank contends that the trial court erroneously excluded evidence of the amount of other insurance policies. The trial court allowed the Bank to introduce evidence that Mr. Bauert had in force two additional insurance policies in which Mrs. Bauert was the named beneficiary. However, the court refused to allow evidence of the face amounts of the policies, which together totaled $750,000. The Bank argues that Mr. Bauert had adequately provided for his wife with the additional insurance, and that, having done so, the proffered evidence is admissible to show that Mr. Bauert would not have insisted that the excess proceeds from the $200,000 partnership policy should go to his wife.

Mrs. Bauert contends the evidence was correctly excluded because its admission would indirectly show her financial status. In this instance, the financial standing of Mrs. Bauert is not relevant to the controlling issue. *See Upjohn Company v. Petro Chemical Suppliers, Inc.,* 537 S.W.2d 337, 340 (Tex.Civ.App.—Beaumont 1976, writ ref'd n. r. e.); *Coca Cola Bottling Co. of Fort Worth v. Tannahill,* 235 S.W.2d 224,

226 (Tex.Civ.App.—Ft. Worth 1950, writ dism'd); *Dreiss v. Friedrich*, 57 Tex. 70 (1882). Accordingly, we conclude that the trial court did not abuse its discretion by refusing to admit the proffered evidence. The Bank's tenth point is overruled.

In summary, we have considered all of the Bank's points of error and contentions made thereunder, and we conclude that such points and contentions do not present cause for disturbing the judgment. Accordingly, the judgment is affirmed.