Julie Arita Benham MANNING et vir,
Appellants,

v.

Charles E. BENHAM, Appellee.

No. 13917.

Court of Civil Appeals of Texas.

Houston.

June 21, 1962.

Rehearing Denied Sept. 13, 1962.

Mann, Fisher & Castillon, Sam R. Fisher, Laredo, for appellants.

Juanita P. Keen, Bettye J. Lambert, Houston, for appellee.

COLEMAN, Justice.

This is an action brought by appellee, Charles E. Benham, against his former

wife, Julie Arita Gary Benham Manning, and her husband, Hugh Manning, for an adjustment of equities, by way of contribution, reimbursement or accounting, arising from properties purchased, and debts contracted, during the marriage of appellant and appellee, which were not settled by the decree of divorce. After a trial to the court without a jury, appellee was awarded a judgment in the amount of $8,-456.28, and appellant has appealed.

The controversy revolves around certain property, which for convenience will be designated Houston property, Kenner lots, and Compromise Street house. The Houston property was owned by appellant prior to her marriage to appellee on August 31, 1946. On November 25, 1947, the existing mortgage on the property was increased, and both appellee and appellant executed a note in the sum of $11,500.00 and a mortgage on appellant's separate property. The sum of $7,000.00 was borrowed thereby for the community funds. After the marriage was dissolved by divorce, this note was paid in full and appellee contributed to the payment thereof the sum of $7,014.49. In order to pay the community portion of the obligation, including interest, the sum of $7,751.16 was required. It thus appears that appellee contributed the sum of $3,238.91, more than one-half of the community obligation.

The Kenner lots were purchased during the marriage for cash. Appellant contended that they were paid for by her with her separate funds. She produced checks signed "Mrs. C. E. Benham, Special Account" for the greater portion of the consideration. Appellee did not testify directly that the funds used to pay for these lots were community funds, but he did testify generally to the effect that he and appellant chose and bought the lots as a site for a future home. The funds with which the "Mrs. C. E. Benham, Special Account" was established were not traced other than through the testimony of appellant that it was her personal money and that it was money she had earned. Appellant testified to the sale of

certain separately owned properties some years previously, but did not trace any of the proceeds into this bank account. She testified that she had several bank accounts under different names. During the marriage and prior thereto she had income from business ventures with her brother and from rentals from her separately owned property. Appellee testified that prior to and at the time of the purchases he was employed at a salary of $650.00 per month plus expenses, and that his wife managed the family finances. The deed to the property was taken in their names jointly. No proof of the Louisiana community property law was made. The trial court found that the property was community property and his finding is properly supported by competent testimony.

The Kenner lots were sold by appellant acting for herself and as attorney in fact for appellee for the net sum of $4,400.00. The trial court found that the power of attorney authorizing the sale was executed by appellee by reason of representations made by appellant that she would apply the proceeds to reduce the indebtedness on the Compromise Street house. Appellant collected the purchase price, but did not apply the proceeds to debt reduction.

The testimony concerning the purchase of the Compromise Street house is very similar to that concerning the Kenner lots and will not be repeated. The trial court found that it was purchased as community property, and such finding is supported by competent testimony and is not against the great weight and preponderance of the evidence. This property was jointly owned by appellant and appellee at the time of trial and no partition was requested or decreed. The trial court found on sufficient evidence that on the date of the divorce there was indebtedness secured by a lien on the property in the sum of $4,365.99, and at the time of trial a principal balance of $2,291.72. He further found that there was paid on this loan from the date of the divorce to the date of trial in principal and interest the sum of $5,588.91, and that of

this sum appellee paid a total of $3,411.82, which was $617.37 more than one-half.

Appellant collected in rentals on the Compromise Street house, from the date of the divorce to the date of the trial, the sum of $5,350.00, and paid for the maintenance and preservation of the property the sum of $350.00. These facts were incorporated in the findings of the court and are supported by the evidence and not so contrary thereto as to be manifestly incorrect and unjust.

When this case proceeded to trial, appellant was a single woman. A take nothing judgment was rendered in favor of Hugh Manning, and no appeal has been taken from this part of the judgment.

■ Appellant contends that the court erred in allowing appellee recovery for any money paid to retire the indebtedness on the Houston property or the Compromise Street house since the payments were voluntarily made for the purpose of retiring appellee's own indebtedness and protecting his credit rating. As between appellee and the mortgagees, appellee clearly was liable for the entire debt. It is also well settled that the mortgagees would have been unable to enforce collection of the debts from appellant except by way of mortgage foreclosure. Poe v. Hall, 241 S.W. 708, Tex. Civ.App.; Giles v. First National Bank of Brownfield, 257 S.W.2d 945, Tex.Civ.App. At the time judgment was rendered granting appellant her divorce from appellee, the court could have required appellant, as between the parties, to assume the payment of a reasonable part of the community indebtedness in connection with the partition of the community estate. Hughes v. Hughes, 259 S.W. 180, Tex.Civ.App.; Mangum v. Mangum, 184 S.W.2d 338, Tex. Civ.App. Since the community property was not divided by the divorce decree, title vested in the parties at the date of the divorce as tenants in common or joint owners. McDaniel v. Thompson, 195 S.W.2d 202, Tex.Civ.App., error ref.; Ex parte Williams, 160 Tex. 314, 330 S.W.2d 605.

■■ It is well settled that a joint owner of real estate, who has discharged a debt constituting a lien on the jointly held property, can recover contribution from the other owners. McKelroy v. Hamilton, 130 S.W.2d 1114, Tex.Civ.App. We think this rule of law applicable to the payments made on the Compromise Street house.

The parties were not joint owners of the Houston property. Appellant's separate property was pledged as security for the payment of a community debt. The general rule applicable, as stated in McKelroy v. Hamilton, supra, is:

"The rule in equity is that one who has been compelled to pay or satisfy the whole or to bear more than his just share of a common burden or obligation on which several persons are equally liable or for which their jointly owned property is liable, is entitled to contribution against the others to obtain from them payment for their respective shares."

■ Appellant and appellee are not equally liable on this note. Community debts are the primary obligation of the husband, who is manager of the community estate. 30 Tex.Jur.2d, Husband and Wife, § 4; Art. 4619, Vernon's Ann.Civ.St.

In Norris v. Vaughan, 152 Tex. 491, 260 S.W.2d 676, the Supreme Court of Texas held:

"The final problem to be considered is the $10,971 reimbursement awarded by the trial court for separate funds expended for community living expenses. It is fundamental that the husband is obligated to furnish support for the community living and if no community funds are available he should utilize his separate funds. Callahan v. Patterson, 4 Tex. 61; Coggin v. Coggin, Tex.Civ.App., 204 S.W.2d 47. It is his duty to provide for the community and in this instance he chose to expend a portion of his separate estate so that the community standard of living could be as it was. Separate

funds spent for community living in such a manner should be deemed a gift to the community for its well-being and use. Allowing a right of reimbursement at a later date would be inconsistent with the fundamental concept that a man should provide for his home and community."

■ The $7,000.00 realized by the community estate of appellee and appellant from the note secured by the Houston property was not shown to have been used to purchase or improve any particular property. In the absence of such a showing appellee proved no right to reimbursement from either the community property or appellant's separate property. Where community funds are used to improve separate property of one spouse, the community is entitled to reimbursement, but only to the extent that the value of the separate estate is enhanced by the improvement. Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777. To permit appellee to recover from appellant any part of the payments made to retire a community indebtedness secured by her separate property would penalize her for permitting use of her separate property by the community. During the marriage the wife cannot make an enforceable agreement to assume primary liability for debts of the community even as between husband and wife. Taylor v. Hollingsworth, 142 Tex. 158, 176 S.W.2d 733. Since she was not personally responsible for the payment of the note in question at the time the divorce was granted, and was not charged with its payment in the process of partitioning the community property, she is not made liable for the note by the fact of divorce. While equity might subject community property in her hands to the payment of community debts, her liability to creditors cannot exceed the value of such community property. American Employers' Insurance Co. v. Dallas Joint Stock Land Bank, 170 S.W.2d 546, Tex.Civ.App. We see no reason why the husband should be able to assert personal liability against his former wife for community debts he has paid with his separate funds where the creditor could not

have done so. The community partners should not be permitted by their voluntary act of securing a divorce to deprive the creditor of the security on faith of which the credit was extended. The husband does not stand in so favorable a position. While he might have contracted the debts in the expectation that community property would be used to pay them, in the event of divorce he had no legal right to require such payment because of the broad discretion inherent in the trial court in the matter of division of community property. Hughes v. Hughes, 259 S.W. 180, Tex.Civ.App.; Mangum v. Mangum, 184 S.W.2d 338, Tex. Civ.App.

■ Since the Kenner lots and the Compromise Street house constituted community property, on divorce appellee and appellant held title to them as tenants in common. 15 Tex.Jur.2d, Cotenancy, § 18.

When the Kenner lots were sold one-half of the proceeds of the sale belonged to appellant. The trial court found on competent evidence that appellant agreed to apply the proceeds of this sale to the retirement of the indebtedness due on the Compromise Street house. This was not done and appellant retained all of the money for her own use. The sale was made April 30, 1952, at which time appellant received $1500.00 cash and three notes in the sum of $1,000.00 each payable in one, two and three years, respectively. The trial court found that defendant discovered that the proceeds of the sale had not been paid as agreed in 1955. This suit was filed on May 23, 1957. Appellant pled the two and four year statutes of limitation.

■ Appellee testified: "No, it was in the latter part of 1954 that I learned that the sale of the lots were made and that none of it was ever applied on it, on the 1203 Compromise home, to W. B. Leedy." This testimony was never explained, modified or repudiated and constitutes a judicial admission.

■ Since appellant held the proceeds of the sale as trustee, the statute of limita-

tions would not begin to run until she had repudiated her trust, and appellee knew of such repudiation. Eaton v. Husted, Tex. Civ.App., 163 S.W.2d 439, aff'd 141 Tex. 349, 172 S.W.2d 493; Collins v. Griffith, 125 S.W.2d 419, Tex.Civ.App., error ref.

■ The record shows that one of the $1,000.00 notes became due on April 30, 1955, and that all of the notes were paid, but the exact date of payment is not shown. The burden was on appellant to establish her defense of limitation. The trial court allowed recovery of one-half of the entire consideration. In this the court erred for the reason that the defense of limitation was established as a matter of law to the initial payment of $1500.00 since it was paid at the time of closing. The defense was not established as to the three $1,000.00 notes since the time of payment was not shown. The evidence establishes that appellant collected and converted to her own use the sum of $3,000.00, of which one-half belonged to appellee.

Appellee did not seek partition of the Compromise Street house, but he sought and was granted an accounting for rentals received by appellant. Appellant has pled the two year statute of limitation.

■ It is settled law that a tenant in common can use the jointly owned property without liability for its rental value, but where the tenant in possession rents the property to a third person, he must account to his cotenant. It is not necessary to bring the action for accounting as an incident to an action of partition. 15 Tex.Jur.2d, Cotenancy, §§ 11, 40.

"Rents and profits received by one cotenant are held by him in trust for his cotenants. And before the statute of limitations will begin to run he must have repudiated the trust and notice of his action must have been brought to his cotenants." 15 Tex.Jur. 2d, Cotenancy, § 41.

■ Appellee testified that he learned that appellant was collecting rent for use of the Compromise Street house not later than the year 1952. He further testified that he either sent her the money with which to make the monthly payments on the purchase price of the house, or else made the payments to the mortgagee directly, since 1951. He further testified that at an unspecified date he demanded an accounting and asked why she didn't pay the monthly notes on the property. The evidence establishes as a matter of law that appellee had knowledge of the breach of trust in 1952. Therefore, appellee's cause of action for rent collected prior to May 23, 1952, was barred by the two year statute of limitation. Art. 5526, V.A.C.S. From the stipulations of the parties it is established that appellant collected the total sum of $3,150.00 as rent within the two years prior to the date suit was filed. Appellee was entitled to judgment for one-half this amount, or $1,575.00.

■ The trial court found on sufficient evidence that appellee had paid on the indebtedness secured by the mortgage on the Compromise Street property after the divorce the sum of $3,411.82, which exceeded his proportionate share of the payments due by the sum of $617.37. Since such payments were reasonably necessary for the preservation of the common property, appellee was entitled to reimbursement from appellant for the sum he paid in excess of his proportionate share. 15 Tex.Jur.2d, Cotenancy, § 12.

Accordingly, the judgment of the trial court is reversed in part and judgment is here rendered that appellee, Charles E. Benham, do have and recover from appellant, Julie Arita Benham Manning, the sum of $3,692.37 together with interest at the rate of 6% per annum from the date judgment was rendered by the trial court, June 5, 1961, and all costs incurred in the trial court. Costs on appeal are taxed against appellee. In all other respects the judgment of the trial court is affirmed.

Reversed and rendered in part and in part affirmed.