Albert R. EDDINGS and Simeon D. Higgins, Appellants,

v.

Winston L. BLACK, Sr., et al., Appellees.

No. 6888.

Court of Civil Appeals of Texas, El Paso.

June 25, 1980.

Rehearing Denied July 30, 1980.

Brewster & Mayhall, Jack L. Brewster, El Paso, for appellants.

Sanford C. Cox, Jr., Peticolas, Luscombe, Stephens & Windle, W. C. Peticolas, Michael C. Boyle, El Paso, for appellees.

## OPINION

WARD, Justice.

Basically, this suit concerns the claim of the two Plaintiffs to an undivided one-half interest in real estate, the breach of a lease contract where one of the Plaintiffs was the lessee on the real estate, a request for an accounting and damages, and, finally, a partition. Trial on this portion of the lawsuit was to a jury, which answered an issue submitted in favor of one of the Defendants that the three-year statute of limitation applied while answering other issues favorable to the Plaintiffs on lost profits and reasonable rentals. The trial Court granted the Defendants' motion for judgment non obstante veredicto under Rule 301, Tex.R. Civ.P., on two of the issues which were answered favorably to the Plaintiffs, and a take nothing judgment was entered against the Plaintiffs. Another part of the Plaintiffs' cause of action sought a judgment against a Defendant Bank for slander of title and damages, and, as to this portion, the Court instructed a verdict in favor of the Bank. As to the judgment entered in favor of the Defendant Bank based on the instructed verdict, we affirm. As to the balance of the judgment, we reverse and remand.

In 1946, the Defendants Winston Black and wife conveyed an undivided one-half interest in the real estate at 2515 North

Mesa in El Paso to the Plaintiff Simeon Higgins and Pete Eddings. At the same time, these Defendants leased their remaining undivided one-half interest in the real estate to Higgins and Eddings for a period of ten years, with successive options to renew. The lessees obligated themselves to operate a filling station on the premises, and the rental thereunder was based on gasoline sales with a minimum amount of $150.00 per month to be paid the Blacks. Upon any breach or expiration of the lease, an option was granted to the Blacks to repurchase the undivided one-half interest in the real estate for $12,500.00, less certain depreciation.

In 1952, Higgins and Eddings needed to borrow some money, and, to enable them to secure the loan, and to avoid the business homestead question, these parties agreed to convey the real estate to the Defendant Triangle Distributing Company, Inc., the stock of which was all owned by the Blacks. The corporation would execute the note and mortgage the real estate, but Higgins and Eddings would actually repay the loan. The parties orally agreed at the time of the conveyance to Triangle that, when the loan was repaid, Triangle in turn would reconvey the undivided interest in the real estate back to Higgins and Eddings and to the Blacks. At the time the loan was secured, the lender required that the Blacks release their option to repurchase the real estate. This release, which was dated May 31, 1952, was executed by Black, but his wife refused to sign the instrument.

Higgins and Eddings did repay the loan, and at that time the parties agreed to leave the title to the real estate in Triangle Distributing Company in order that they might borrow money in the future with the property as security.

There is no dispute among the parties as to the facts as outlined above. However, according to the Blacks, it was also the agreement of the parties that, at the time the option to repurchase was released, Higgins and Eddings agreed that whenever Triangle Distributing Company reconveyed the real estate to the parties, the option to repurchase in favor of the Blacks would be reinstated. This agreement or understanding was disputed and became an issue in the case. The title to the real estate remained in Triangle Distributing Company, and it was this condition of the title that the Plaintiffs complained of at trial.

According to the Blacks, Higgins and Eddings in 1956 exercised their option to renew the lease of the outstanding one-half interest in the real estate, and they became tenants under the lease for an additional period of ten years. In February, 1959, Pete Eddings died, and his interest vested in his son, Albert Eddings. Albert Eddings was not interested in the filling station, and he sold his interest in that business and his interest in the lease to Higgins, who was also his uncle. However, Albert Eddings is one of the Plaintiffs to the present suit because of his claim to one-fourth interest in the real estate.

In 1961, Mr. Black suggested to the Plaintiffs that a restaurant building could be built on the north end of the property, since it was not being used by the filling station, and requested that the Plaintiffs participate in the construction. When it appeared that the cost of the construction would be more than the Plaintiffs could afford, Mr. Black had the building erected at a cost of $82,000.00. To secure the necessary financing for this construction, Triangle Distributing Company borrowed the money by executing a note and securing the loan by a deed of trust on the real estate in question, as well as on two other parcels of property owned by Triangle Distributing Company. According to Mr. Black, neither of the Plaintiffs objected to his constructing the building nor did they object to his renting the new building to Jerry Wolfe as a Pancake Cottage. The new building was completed and was occupied in February, 1962.

In 1966, the lease on the filling station was renewed by Mr. Higgins for an additional period of ten years under the terms of the option to renew provisions of the lease. Higgins continued to operate the filling station until December, 1968, when he left the premises. At that time, Mr.

Black had the garage and filling station on the leased premises torn down, and the entire area blacktopped. A dispute is noted as to what occurred. Black contended that he made an oral agreement with the Plaintiffs in March, 1969, that the lease be terminated; that he would repurchase Plaintiffs' interest in the property according to the terms of his option to repurchase made in 1946, which required that he pay the Plaintiffs $12,5000.00, less depreciation. According to Mr. Black, this agreement was that he would pay them twelve payments of $400.00 per month for the land, and nineteen payments of $200.00 per month as the amount owing on the unused depreciation of the filling station building, and that they recognized Triangle Distributing Company as sole owner of the premises. Thereafter, payments totaling $3,400.00 were made by Black to the Plaintiffs in accordance with the new agreement, but the payments ceased when this suit was filed by the Plaintiffs on June 13, 1972.

Mr. Higgins' testimony was that he was forced to leave the premises on December 22, 1968, because his business at the location had been destroyed by the patrons of the Pancake Cottage. It was his further position that he made no agreement regarding any oral option to permit Mr. Black to repurchase the full title of the real estate, and that all payments which were made to him after he moved from the premises by Mr. Black were for rent to him for Black's full use of the property. The Plaintiffs did admit, however, that Mr. Black owned the Pancake Cottage building.

By their answers to the submitted issues, the jury determined (1) that the release dated May 31, 1952, was not executed by Black on condition that his option to repurchase would again become effective after payment of the $15,000.00 note of that date. By question 2, which submitted Black's theory that in March, 1969, he exercised his oral option with the Plaintiffs to repurchase their interest in the property, the jury failed to find that there was such an oral agreement. Questions 3 through 7, inclusive, were conditioned on an affirmative answer to question 2, and they were not answered. In submitting the balance of Mr. Black's theory that he had acquired the Plaintiffs' interest in the real estate by virtue of the oral conveyance, the jury by (8) determined that Black notified the Plaintiffs of his intention to exercise his option to repurchase for $12,500.00 less depreciation, but by (9) found that the Plaintiffs refused to convey the property for that amount. By their answer to question 10, the jury determined that Triangle Distributing Company, Inc. was in peaceable and adverse possession of the land under title or color of title for a period of three years prior to the date the suit was filed. By (11), the jury found that $28,371.00 would reasonably compensate the Plaintiff Higgins for lost profits suffered by him as a result of the traffic created by the Pancake Cottage which interfered with the access to his service station. By (12), $100,000.00 was found to be the present market value of the improvements on the property; by (13), $200,000.00 was determined to be the present market value of the land only; by (14), $77,200.00 was found to be the reasonable rental value of the land for the period of time beginning from the time of completion of the Pancake Cottage to the date of trial; and by (15), that $3,400.00 was the amount of rent paid to the Plaintiffs during that same period of time.

After receipt of the verdict, the Defendants filed motion for judgment that Triangle Distributing Company recover title and possession of the premises, and the Blacks, having admitted they owed $5,200.00, moved for entry of judgment in favor of Plaintiffs for that sum, and, thereafter, judgment was entered in accordance with that motion. The Plaintiffs then filed their motion for new trial, and, while that motion was pending, the Defendants filed a motion that the jury findings to special issue 11, concerning loss of profits, and special issue 14, concerning rental value of the property, be disregarded in accordance with Rule 301, Tex.R.Civ.P. The Court then considered the Defendants' said motion to disregard, granted it, and rendered a new judgment replacing the first one, the last

one reciting that the Court had granted the Defendants' motion to disregard the issues. The Plaintiffs now complain that the trial Court was without jurisdiction to entertain Defendants' Rule 301 motion after the entry of the first judgment. The Plaintiffs' point is overruled as such a motion may be filed after rendition of judgment, provided that it be acted on by the trial Court before its original judgment becomes final. 4 McDonald, Texas Civil Practice sec. 17.32 at 210 (1971); O'Connor, *Appealing Jury Findings*, 12 Hous.L.Rev. 65 at 71 (1974).

■ One of the Plaintiffs' points cites error in the overruling of their motion for partial summary judgment where they requested an undivided one-half interest in the real estate. Denial of such a motion for summary judgment is interlocutory and not appealable. *Southwestern Materials Co. v. George Consolidated, Inc.*, 476 S.W.2d 454 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n. r. e.). The point is overruled.

■ Three points are noted where the Plaintiffs complain of the action of the trial Court in refusing to grant them leave to file a trial amendment to their cause of action against the Bank, and the subsequent action of the trial Court in instructing the verdict in the Bank's favor. After the Plaintiffs filed their suit against the Blacks and Triangle Distributing Company, they filed a lis pendens notice, and, thereafter, in 1975, the Blacks and Triangle Distributing Company executed a deed of trust in favor of the Bank on the property in question to secure a loan which the Bank made to those Defendants. Plaintiffs then joined the Bank on the theory that the creation of this lien constituted a cloud of title on their property as well as a slander of their title, for which they were entitled to actual and exemplary damages. At the close of the evidence, the Plaintiffs moved to permit the filing of a trial amendment, which alleged that the other Defendants in 1974 had granted the Bank an exclusive option to purchase the property over a period of eight years, and in some manner that had damaged the Plaintiffs. The Plaintiffs were protected by their lis pendens notice in

the event they prevailed as to their title, and we find that they failed to establish the necessary elements of their suit for slander to title. *Louis v. Blalock*, 543 S.W.2d 715 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.). We also find there was no abuse of discretion as to the trial Court's ruling on the trial amendment. The points under discussion are overruled.

■ A series of "no evidence" points attack special issue 10 and the finding thereunder submitting Triangle Distributing Company's contention that it had acquired the Plaintiffs' interest in the real estate by virtue of the three-year statute of limitation. In reviewing these legal sufficiency points, we are required to consider only the evidence and the inferences therefrom which support the jury's findings. From this viewpoint, we find the evidence to be that Higgins, Eddings and the Blacks agreed that they would convey the real estate to the Defendant Triangle Distributing Company, who would hold the real estate until the parties called upon the corporation to deed the property back to them. The parties never called upon the corporation to fulfill that oral agreement because in March, 1969, Black made the statement that he would repurchase the Plaintiffs' interest in the property, and thereafter the property was claimed adversely to the claims of the Plaintiffs. The reasonable inference from the evidence is that Black in those negotiations was acting as the agent for Triangle Distributing Company, and that Triangle was actually asserting the adverse claim. We hold this evidence constituted sufficient notice to the Plaintiffs that the Defendant, Triangle Distributing Company, had repudiated their claim of joint ownership, and was thereafter holding adversely. Notice of repudiation of the common title was clear, unequivocal and unmistakeable. See: *Todd v. Bruner*, 365 S.W.2d 155 (Tex.1963), and the adverse possession definition of Art. 5515, Tex.Rev.Civ. Stat.Ann. The points arguing to the contrary are overruled.

■ There are points which contend that the three-year statute of limitation does not

apply as the title claimed by Triangle Distributing Company is not such a title or color of title as required by Arts. 5507 and 5508, Tex.Rev.Civ.Stat.Ann. We sustain the points under the authority of *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962). While the Court was there dealing with a deed from a trustee under a resulting trust, the same principles are applicable. The Court stated the following:

> The word 'title' in Article 5507 has been held to include both the legal and equitable title as granted by the sovereign in the original grant, to the extent that the original grant so conveyed them. . . . The purported conveyance here from a trustee to one not an innocent purchaser could only convey the legal title, which is not sufficient title to support the three-year statute of limitation. . .

Speaking of the requirements of Article 5508 that the title be such as not to include a want of intrinsic fairness and honesty, the Court stated:

> A conveyance by a trustee to one with knowledge of the trust is wanting in intrinsic fairness and honesty, therefore will not support the three-year statute of limitation under color of title.

Triangle Distributing Company admittedly held only the legal title of the Plaintiffs by virtue of an express oral trust that is not challenged in any way. It did not get the equitable title by the deed of 1952. The legal title that it received is not sufficient to support the three-year statute of limitation. Further, the jury determined that the release dated May 31, 1952, by Mr. Black was not executed on condition that it would again become effective after the payment of the $15,000.00 note. Under these circumstances, the claim made by Triangle Distributing Company to the land is wanting in intrinsic fairness and honesty, and will not support the three-year statute of limitation. We sustain the Plaintiffs' Points of Error IV, VII and VIII.

The trial Court granted the Defendants' motion for judgment non obstante veredicto against the finding by the jury to issue 11

that $28,371.00 would reasonably compensate the Plaintiff Higgins for loss of profits suffered by him because of the blocking of the access to his service station. As we understand his claim, he contended that he was entitled to the loss of profits up until he abandoned the premises in 1968. Defendants pled and urged the two-year statute of limitation to this claim where suit was not filed thereon until June, 1972. No fact issue was involved, and the statute of limitation barred this claim. The points urged by the Plaintiff Higgins as to this claim are overruled.

The trial Court also disregarded the finding made by the jury to issue 14 that $77,200.00 was the reasonable rental value of the land only beginning from the time of the completion of the Pancake Cottage to the date of commencement of trial. The Court took this action on the basis of the finding by the jury to special issue 10 that Triangle Distributing Company had been in peaceable and adverse possession of the land under color of title for a period of three years prior to June 13, 1972. In accordance with the instructions, the jury had to find the period of three years did not begin to run until Triangle repudiated the claim of title of the Plaintiffs and brought such notice of repudiation to the Plaintiffs.

A tenant in common can use jointly owned property without liability for its rental value, but, where the tenant in possession rents the property to a third person, he must account to his cotenant. Rents and profits received by one cotenant are held by him in trust for his cotenants. Before the statute of limitation will begin to run, he must have repudiated the trust and notice of his action must have been brought to his cotenants. See: 15 Tex. Jur.2d *Cotenancy* secs. 11, 40 and 41 (1960). Since Triangle did not acquire title by limitation but where there was a repudiation, then the Plaintiffs' cause of action for rent prior to June 19, 1970, would have been barred by the two-year statute of limitation. Art. 5526, Tex.Rev.Civ.Stat.Ann.; *Manning v. Benham*, 359 S.W.2d 927, 932 (Tex.Civ.App.—Houston 1962, writ ref'd n.

r. e.).  In view of this situation, the trial Court was in error in disregarding that portion of the finding to special issue 14 concerning the rents that accrued after June 1970.

We have considered all of the Plaintiffs' points with the exception of point 13, which is not reached.  Except as noted, the Plaintiffs' other points are overruled.  Since the liability issues as to the Blacks and Triangle Distributing Company are contested, a reversal and remand for a separate trial on unliquidated damages as to them cannot be ordered.  Rule 434, Tex. R.Civ.P.  The judgment that the Plaintiffs take nothing against the Bank is affirmed and a severance is ordered as to that part of the Plaintiffs' cause of action from the balance.  As to the balance of the judgment wherein Triangle Distributing Company recovers the title and possession of the real estate and wherein the Plaintiffs recover a judgment against the Blacks is reversed and a new trial is ordered.